UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JULIE A. BEBERMAN,<br><br>               *Plaintiff*,<br>    v.<br><br>ANTONY BLINKEN *in his official capacity as Secretary of State*,<br><br>               *Defendant*. | Civil Action No. 23-686 (TJK) |

**MEMORANDUM OPINION**

This is one of more than a dozen federal lawsuits brought by Julie Beberman related to her employment at the State Department. Beberman was denied tenure and separated at the end of a limited career appointment in the Foreign Service, yet remained there almost four more years while she challenged her denial of tenure. In that time, she was offered a diplomatic courier position within the Foreign Service conditioned on a suitability determination, but the review panel tasked with making that determination did not make its decision until the day after she was ultimately separated from the Department. Because she was no longer employed there, she could not grieve the substance of that denial. Instead, before she left, Beberman brought a grievance with the Department arguing that its delay acting on her conditional offer was retaliatory and motivated by her other grievance activity. The Department denied her relief in connection with that grievance, as did the Foreign Service Grievance Board, and Beberman sued to appeal the Board's decision. The parties cross-move for summary judgment. For the reasons explained below, the Court will grant summary judgment for the Department, and deny it for Beberman.

I.   **Factual and Administrative Background**

Beberman was hired by the State Department as an untenured Foreign Service career candidate meaning that, as an untenured employee, she was hired for a limited career appointment of five years, after which the Department would either offer her tenure or separate her from the Foreign Service. ECF No. 21-1 ¶¶ 1–3; *see* 3 FAM 2216.2-1(c), 2245.1; 22 U.S.C. § 3949(a). At the beginning of 2016, after Beberman had been in that position for five years, her application for tenure was denied based at least in part on earlier performance concerns while she was on a consular appointment in Caracas, Venezuela. ECF No. 21-1 ¶¶ 6–9. There, she was found to have violated the Visa Lookout Accountability Act, and her access to consular systems was revoked by her supervisor. *Id.* ¶ 7. But she was not immediately separated from the Department. Far from it. She brought a series of grievances against the Department related to her employment there, and she remained at the Department on an interim basis for almost four more years while she challenged her denial of tenure. *Id.* ¶¶ 10–12. During that time, in March 2018, Beberman received a conditional offer for a diplomatic courier position in the Department, contingent on obtaining medical and security clearances as well as approval from the Suitability Review Panel. *Id.* ¶ 13.

Beberman's interim relief from separation from the Department was set to expire on October 31, 2019, after the Foreign Service Grievance Board denied the last of her requests for interim relief from separation related to her denial of tenure. ECF No. 21-1 ¶ 12; *see* Administrative Record ("AR") 23. At that point, her diplomatic courier offer remained, pending approval of the Review Panel. ECF No. 21-1 ¶ 14. That day, Beberman brought another grievance against the Department—the October 2019 grievance that ultimately formed the basis for this lawsuit—accusing it of retaliating against her by holding up her diplomatic courier candidacy. *Id.* The next day, after she had involuntarily retired from the Foreign Service, Beberman received the Review Panel's negative determination, which referenced the same performance concerns from her consular

2

appointment in Caracas, Venezuela, as well as "false or misleading statements and omissions of relevant information regarding [her] employment history" in her questionnaire submitted along with her application for the diplomatic courier position. AR 411; *see also* ECF No. 21-1 ¶¶ 15–16.

In January 2020, the Department denied Beberman's October 2019 grievance. ECF No. 21-1 ¶ 17; AR 23–26. The next month, Beberman appealed to the Grievance Board and also sought "interim relief" from separation although, at that point, she had already been separated from the Foreign Service. ECF No. 21-1 ¶¶ 18–19; AR 3–15. In March 2020, the Board denied Beberman's request for immediate, interim reinstatement, explaining that it lacked the authority to grant her that relief. ECF No. 21-1 ¶ 21; AR 103. A few months later, the Board denied her motion for reconsideration for that immediate, interim reinstatement. AR 140–49.

In June 2020, the Department moved to dismiss Beberman's claims connected to her October 2019 grievance that were on appeal to the Grievance Board, which the Board granted in part and denied in part. ECF No. 21-1 ¶¶ 22–26; AR 190–207. The Grievance Board dismissed two of her retaliation claims. First, it dismissed her claim that her separation from the Foreign Service was retaliatory, reasoning in part that Beberman had not shown that her separation was an adverse action because it was "mandatory" after her limited career appointment expired. AR 201. Second, the Board dismissed her claim that the Department retaliated against her by refusing to offer her reinstatement as part of any settlement agreement, reasoning, again, that she had not shown any adverse action since the Department had "no legal obligation to enter into settlement negotiations or agree to any terms offered by an employee." AR 202. The Board's handling of Beberman's third and final claim—that the Department retaliated against her by delaying the Suitability Review Panel's consideration of her candidacy to serve as a diplomatic courier—then took a more

3

circuitous route. The Board held it in abeyance pending a decision of the Department's Office of Civil Rights on a closely related retaliation claim. AR 205.[1] Beberman then lost before the agency on that other retaliation claim. AR 223–42. And in December 2022, the Board denied her claim relating to the Suitability Review Panel's delay. AR 886–925. The Board held that Beberman had failed to establish a case of retaliation and, in any event, that it could not grant her the relief she sought. AR 910–12, 915–19.

Beberman sued to challenge these denials under the Administrative Procedure Act, and the parties have now cross-moved for summary judgment. ECF Nos. 14, 18.

## II. Legal Standard

In general, courts review cross-motions for summary judgment under Federal Rule of Civil Procedure 56. Under that standard, a court must grant summary judgment when "there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). But when the court reviews a final agency action, it operates as an "appellate court[] resolving legal questions." *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1096 (D.C. Cir. 1996). "The 'entire case' on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). "Summary judgment thus serves as the

---

[1] Beberman's other claim involved her assertion that the Department retaliated against her in the same ways alleged in this case, but there, for filing Equal Employment Opportunity complaints. After losing before the agency, she then sought to amend her grievance at issue in this case to add another claim that the Department retaliated against her by waiting until after she had been separated from the Foreign Service to issue the negative Suitability Review Panel determination, to prevent her from grieving the substance of that decision. AR 244–45. The Grievance Board denied her motion to amend as untimely because, although she had known about the Review Panel's decision since November 1, 2019, she did not move to amend until February 2020, despite having "many opportunities" to do so. AR 268–69. And it found that Beberman had failed to show good cause to excuse the tardiness of her motion because she "provided no explanation" for the delay. AR 269–70. Beberman does not challenge the Board's decision denying her motion to amend.

mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA ["Administrative Procedure Act"] standard of review." *Alston v. Lew*, 950 F. Supp. 2d 140, 143 (D.D.C. 2013).

"[T]he party challenging an agency's action as arbitrary and capricious bears the burden of proof." *San Luis Obispo Mothers for Peace v. U.S. Nuclear Regul. Comm'n*, 789 F.2d 26, 37 (D.C. Cir. 1986) (en banc); *see also* 22 C.F.R. § 905.1(a) (By State Department regulation, "[i]n all grievances other than those concerning disciplinary actions, the grievant has the burden of establishing, by a preponderance of the evidence, that the grievance is meritorious."). And a moving party is entitled to "judgment as a matter of law" where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990) (citation omitted).

Under the Foreign Service Act, "any aggrieved party may obtain judicial review of a final action of the [Foreign Service Grievance] Board in the district courts of the United States." 22 U.S.C. § 4140. The Foreign Service Act provides that the APA, 5 U.S.C. § 706, "shall apply without limitation or exception" to a district court's review of a decision by the Foreign Service Grievance Board. "Under the Administrative Procedure Act, a court may set aside an agency's final decision only if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Ams. for Safe Access v. DEA*, 706 F.3d 438, 449 (D.C. Cir. 2013) (quoting 5 U.S.C. § 706(2)(A)). "[I]n judicial review of agency action, weighing the evidence is not the court's function. Rather, the question for the court is whether there is 'such relevant evidence as a reasonable mind might accept as adequate to support' the agency's finding . . . ." *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Pension Benefit Guar. Corp.*, 707 F.3d 319, 325 (D.C. Cir. 2013) (quoting *Consolo v. Fed. Mar. Comm'n*,

5

383 U.S. 607, 620 (1966)).  Courts "will not disturb the decision of an agency that has examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Ams. for Safe Access*, 706 F.3d at 449 (alterations and internal quotations omitted).  A court may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974).  But a court should not "supply a reasoned basis for the agency's action that the agency itself has not given." *Motor Vehicle Mfrs. Ass'n of U.S. Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983) (quotations omitted).  And an agency's decision may be arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.*

**III.   Analysis**

Beberman alleges that the Grievance Board erred in four ways.  To begin, she argues that the Board was wrong to dismiss her first and second claims described above because she purportedly did not identify any adverse action against her.  Third, Beberman challenges the Board's decisions that she failed to show that the Suitability Review Panel's delay was retaliatory and that, in any event, it could not grant her the requested relief.  And fourth, Beberman asserts that the Board should have afforded her what she terms "interim relief" from separation.  She argues that the Board should have reinstated her while her appeal of these issues was pending before it, and that she is owed backpay because of its failure to do so.

**A.   Beberman's "Retaliatory Separation" Claim**

Beberman first argues that the Department erred in failing to suspend her separation from the Foreign Service until after it had resolved her October 2019 grievance.  *See* ECF No. 14-1 at

28–31. The Grievance Board dismissed this "retaliatory separation" claim in part because it found that Beberman had failed to identify a legal cognizable adverse action against her.[2] To state a claim of retaliation under the relevant regulations, Beberman must allege that "(1) she engaged in an activity protected by statute, (2) agency officials had actual or constructive knowledge that [she] had engaged in protected activity, (3) she subsequently was subjected to an adverse personnel action, and (4) there is a causal connection between the protected activity and the adverse personnel action." FSGB Case No. 2009-002, 2009 FSGB LEXIS 231, at *13 (Dec. 1, 2009). The Board held that Beberman failed to identify an adverse action taken against her. AR 201. It reasoned that "[t]he Department was required to proceed with [Beberman's] separation because her [limited career appointment] had expired and her Board-ordered [temporary interim relief] had ended." *Id.*; *see also* 3 FAH-1 H-2246.4(b)(4) ("Individuals who are not recommended for tenure will be separated from the Service at the end of their limited appointment, or earlier if the Board's recommendation for earlier separation is approved by the Director General."). And "[a] mandatory action taken by the Department cannot as a matter of law be one that might have dissuaded a reasonable employee from engaging in the grievance process." AR 201.

Beberman contends the Grievance Board's decision was arbitrary and capricious or otherwise contrary to law. To make her case, Beberman maintains that the Department was required by 3 FAM 4431 to afford her interim relief from separation while her October 2019 grievance was

---

[2] Beberman does not clearly describe this claim, although it appears to be is a whittled down version of her "retaliatory separation" claim before the Grievance Board. AR 199–201. Along with finding that Beberman had failed to identify an adverse action against her, the Board also concluded that her theory of "disparate treatment" was non-cognizable. AR 201. Beberman does not appear to press that same theory here, and the parties do not address whether whatever remains of Beberman's claim could stand alone without it. The Court need not address that issue, though, because it finds that the Board's conclusions that Beberman did not identify an adverse action against her and that her grievance was not "integral" to her separation were not arbitrary and capricious.

pending before the agency.[3]  Under that regulation, in cases involving "[s]uspension, separation, and termination," the Department must temporarily suspend the proposed action "until completion of agency procedures and for a period thereafter of 15 days" to allow the grievant to "request further interim relief," except where "the grievance is not integral to the proposed action."  3 FAM 4431(b)(2), (d), (e).  But, Beberman argues, her grievance *was* integral to the proposed action (her separation) because she had argued that the Department erred in failing to suspend her separation from the Foreign Service until after the Board had resolved several pending motions for reconsideration she had filed in two of her other grievance appeals, in which she asked the Department to reconsider its denials of continued interim relief from separation.  ECF No. 14-1 at 28–31.  Yet, the Department did not decide her grievance until months after she was separated from the Foreign Service.  Thus, she says, the Department's decision to separate her was contrary to its own regulations.  And it was arbitrary and capricious for the Board to conclude otherwise.[4]

But the Department disagreed that her grievance was "integral" to the proposed separation.  AR 24.  The Board later agreed, explaining, "the instant challenge is not to the Department's decision to separate her, but rather to its refusal to retain her in the [Foreign Service] until the Board's decision on [her motions for reconsideration]" in her other grievance appeals, and thus it found "the Department was not required to accord grievant [interim relief] from separation pending final

---

[3] Beberman also mentions 22 U.S.C. § 4133(a), which provides that "[a]ny individual filing a grievance under this subchapter . . . shall be free from any restraint, interference, coercion, harassment, discrimination, or reprisal in those proceedings or by virtue of them."  She does not, however, explain how it has been violated.

[4] Beberman never explicitly connects her argument that her grievance was "integral" to the proposed separation under 3 FAM 4431 to the Grievance Board's conclusion that she did not identify an adverse action against her.  Regardless, for all the reasons explained, the Court does not find that the Board erred in concluding that her grievance was not integral to the proposed separation.  Thus, this argument not only gets her nowhere in identifying an adverse action against her, it provides no reason to conclude that the Board erred in any other way.

agency decision of her grievance." AR at 206. "In those cases where grievant actually challenges the February 2016 separation decision on a variety of grounds, the Department suspended her separation in accordance with 3 FAM 4431(d) and continued to do so until the Board denied [interim relief] in those cases." *Id.* But her "claim of retaliatory separation, while facially appearing to challenge her separation, in fact is limited to the Department's mandatory action to effectuate a separation decision that was made in February 2016." *Id.*

That decision was not arbitrary and capricious or otherwise contrary to law. Beberman was slotted for separation from the Foreign Service in 2016, at the end of her limited career appointment there. In her October 2019 grievance, she did not challenge the validity of that 2016 separation, but Department action while she continued to be employed there on an interim basis, all of which happened in 2019 or later. And Beberman does not identify any authority that supports the notion that she had a right to—or even that the Department could have provided her—interim relief from separation from the Foreign Service simply because she continued to challenge other, unrelated agency action. Thus, Beberman has not shown that the Board's conclusion that she had not suffered an adverse action was arbitrary and capricious or contrary to law.

Beberman is understandably frustrated that the Department did not make its decision until January 2020, and she did not receive that decision until early February, so by the time she could appeal to the Grievance Board she was no longer employed in the Foreign Service, and the Board lacked the authority to reinstate her. For that reason, 3 FAM 4431(e) provides that "[t]he agency shall suspend its proposed action until completion of agency procedures and for a period thereafter of 15 days to permit the grievant to file a grievance with the Board and to request further interim relief." But as described above, that is only if the claim is "integral" to the proposed action, and the Department afforded her that relief many times beforehand. The regulation does not dictate

9

that the Department must make a formal decision that the grievance is not integral to the proposed action before it can separate the grievant, and Beberman cites no authority for that proposition. At bottom, the Department found that her grievance was not integral to her separation, the Board agreed, and that decision was not arbitrary and capricious.

> **B.** **The Department's Refusal to Re-Hire Beberman in Settlement Negotiations**

Beberman also challenges the terms by which the Department proposed to settle her other grievances as retaliatory because they did not include reinstatement in the Foreign Service. ECF No. 14-1 at 28–31. As with her retaliatory separation claim, the Grievance Board dismissed this claim because she failed to plead an adverse action against her. Beberman says that decision was arbitrary and capricious.

Again, to determine whether the Grievance Board's decision to dismiss a claim was arbitrary and capricious, the Court considers whether Beberman stated a claim. And to state a claim of retaliation, she must allege "(1) she engaged in an activity protected by statute, (2) agency officials had actual or constructive knowledge that [the grievant] had engaged in protected activity, (3) she subsequently was subjected to an adverse personnel action, and (4) there is a causal connection between the protected activity and the adverse personnel action." FSGB Case No. 2009-002, 2009 FSGB LEXIS 231, at *13 (Dec. 1, 2009). The Board dismissed this claim on the third prong, reasoning that the Department's refusal to consider rehiring her into the Foreign Service as part of any settlement did not constitute retaliatory adverse action. AR 202. The Board noted that "[t]he Department is under no legal obligation to enter into settlement negotiations or agree to any terms offered by an employee, and concomitantly, an employee has no right to a settlement of a grievance, let alone one on any particular terms." *Id.* And while recognizing that Beberman "was adversely affected by the refusal of the Department to settle her claims by continuing her in the [Foreign Service]," it concluded that that alone did "not make such refusal an adverse action." *Id.*

An act is materially adverse if it objectively "would have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Baloch v. Kempthorne*, 550 F.3d 1191, 1198 (D.C. Cir. 2008) (cleaned up); *Flores v. Crown Bldg. Maint., Co.*, No. 23-cv-275 (JEB), 2024 WL 1795974, at *5–6 (D.D.C. Apr. 25, 2024). And the Grievance Board recognized that "[a]n employee does not suffer a materially adverse change in the terms and conditions of employment where the employer merely enforces its preexisting . . . policies in a reasonable manner." AR 201 (quoting *Joseph v. Leavitt*, 465 F.3d 87, 91 (2d. Cir. 2006)).[5] Beberman was hired into a limited career appointment in the Foreign Service and failed to be recommended for tenure. ECF No. 9 at 206. At the end of that appointment, and once her temporary appointment ran out, she was separated from the Department. *See* 3 FAM 2245.1. Thus, the parties agree that "the Department could decide not to offer Ms. Beberman to continue to serve in the Foreign Service for a good reason, such as, if it were dissatisfied with her performance, or with no reason." ECF No. 14-1 at 27–28. As other courts have held, "exercis[ing] a legal right to refuse to settle a claim and . . . withdrawing arbitration settlement offers cannot be an adverse employment decision, as a contrary finding would force the settlement of such arbitrations." *Brown v. City of Syracuse*, No. 1-cv-1523 (FJS), 2008 WL 5451020, at *4 (N.D.N.Y. Dec. 31, 2008). Thus, the Board's decision that the Department's refusal to rehire her as part of a settlement was not an adverse action was not arbitrary and capricious.

---

[5] The law around "material" adverse action has endured some upheaval in the last few years, at least in the federal system. *See Chambers v. District of Columbia*, 35 F.4th 870 (D.C. Cir. 2022) (en banc) (holding that Title VII discrimination plaintiffs need not show "materially" adverse action); *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346 (2024) (similar). The same is not true, however, for retaliation claims. *See Muldrow*, 601 U.S. at 357 (discussing *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006)).

### C. The Suitability Review Panel's Delay

Next, Beberman argues that the Grievance Board acted arbitrarily and capriciously in denying the main claim in her October 2019 grievance that the Suitability Review Panel's delay was retaliatory. ECF No. 14-1 at 5–26. That claim was the only one to survive the Department's motion to dismiss, but the Board ultimately rejected it as well, for two independent reasons. First, the Board held that Beberman failed to establish a case of retaliation. AR 915–19. And second, the Board determined that it could not grant Beberman the relief she sought: the convening of a reconstituted Suitability Review Panel to re-review her application.[6] AR 910–12. The Board reasoned that the sole "remaining claim in th[e] grievance . . . challenge[d] only the timing, not the substance, of the [Review Panel's] decision." AR 910–11. And reconstituting the Review Panel would "do[] nothing to remedy th[at] harm." AR 911. The Board also held that it lacked the authority to "usurp the prerogatives of the Department" and order a reconstituted panel, particularly where it would have to "presuppose[]" that Beberman "would have prevailed in any such hypothetical grievance" to the substance of the Review Panel's decision. AR 911–12. And it had determined that the grievance's substance was not before it on appeal. AR 912.

The Court considers only the second half of the Grievance Board's decision: that it could not grant Beberman the relief sought. Because that decision was not arbitrary and capricious or contrary to law, and the Board was clear it was an alternative basis for denying relief, the Court need not reach the merits of whether Beberman established a claim of retaliation.

The Grievance Board did not err in concluding it could not order a reconstituted Suitability Review Panel. Beberman ascribes to the Board that authority by analogy, arguing that just as the

---

[6] Beberman claimed she was entitled to a reconstituted Review Panel because she was denied the ability to grieve the original panel's unfavorable decision.

12

Board may order the Department to reconstitute tenure and selection boards to address procedural errors in that process, the Board can do so here as well. ECF No. 14-1 at 25. The Board acknowledged that authority, which in 1984 it had "endorsed . . . as a means for the Department to meet its obligation under 22 C.F.R. 905.1(c) to establish, by a preponderance of evidence, that grievants would not have been promoted or granted tenure even in the absence of procedural error." AR 910–11 (citing FSGB Case No. 84-G-031 (Dec. 21, 1984)); *see also Harter v. United States*, 871 F.2d 1140, 1142–43 (D.C. Cir. 1989); FSGB Case No. 2008-051, at 9–11 (July 14, 2010) (tracing history of reconstituted selection and tenure board process). And it explained that "[t]his practice is now embodied in procedures negotiated between the Department and the American Foreign Service Association," which governs those reconstituted boards. AR 911 (citing 3 FAM 2326.1-4). But Beberman identifies no authority suggesting that the Board has the same power, as a matter of law, to order reconstituted review panels. For that reason alone, the Court cannot find that the Board's decision was arbitrary and capricious.

More fundamentally, though, the Board's decision was not unlawful because even if under some circumstances it has the power to order reconstituted Suitability Review Panels, it was not arbitrary and capricious for it to have concluded that it lacked the authority to do so here, where Beberman could only challenge the timing—not the substance—of the Review Panel's decision, and a reconstituted panel could not remedy that timing. Beberman's grievance challenged the timing of the Review Panel's decision, not the substance, which she concedes she "could no longer grieve." ECF No. 21 at 7; *see also* AR 922 ("Grievant lost the opportunity to grieve the [Review Panel] decision as an inevitable corollary of her involuntary retirement, a separate and distinct employment action not the subject of the instant grievance, following on her failure to gain tenure and the exhaustion of interim relief from separation arising from prior grievances."). As the Board

13

reasoned, reconstituting the Review Panel would "do[] nothing to remedy th[at] harm." AR 911. So although Beberman contends that "release of its decision, ending the delay, was insufficient to remedy" the harm, *see* ECF No. 14-1 at 24–25, neither would reconstituting the Review Panel, even if the Board had the power to do so.

Beberman counters that "retaliatory animus permeated the [Suitability Review Panel's] decision-making process," and thus the "release of its decision, ending the delay, was insufficient to remedy the retaliatory animus that infected the decision-making process." ECF No. 14-1 at 24–25. And "[g]iven this procedural error," she says, "the Department was required to show that, even absent that retaliatory animus, the [Review Panel] would have reached the same decision." *Id.* at 25; *see also id.* (citing 22 C.F.R. 905.1(a), (c), which provides that "[w]here a grievant establishes that a procedural error occurred which is of such a nature that it may have been a substantial factor in an agency action with respect to the grievant, and the question is presented whether the agency would have taken the same action had the procedural error not occurred, the burden will shift to the agency to establish, by a preponderance of the evidence, that it would have done so.").

These arguments get Beberman nowhere. For starters, whether retaliatory animus was present in the Suitability Review Panel's process has nothing to do with whether the Grievance Board has the authority, as a matter of law, to order a reconstituted Review Panel. In addition, Beberman has not shown or pointed to any authority that "retaliatory animus" is a procedural error under 22 C.F.R. 905.1 that would absolve her of the burden of proving her own case for a grievance—that there was retaliatory animus in the first place. Thus, she continued to bear the "burden of establishing, by a preponderance of the evidence, that the grievance [was] meritorious." 22 C.F.R. 905.1(a). And even if she had met her burden, that would not undermine the Board's conclusion

that—because her grievance only challenged the timing, and not the substance, of the Review Panel's decision—it did not have the authority to order a constituted Review Panel because that could not remedy her grievance.[7]

Beberman requested no other relief.[8] And without an available remedy, her claim could not proceed. *Cf. Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). She does not argue otherwise. Thus, the Grievance Board's decision was not arbitrary and capricious or contrary to law.

### D.    Beberman's Request for Interim Relief from Separation

Finally, Beberman challenges as arbitrary and capricious the Grievance Board's decision denying her interim relief from separation while it handled her appeal related to her October 2019 grievance. Beberman had sought "interim relief" in February 2020, almost four months after she had been separated from the Foreign Service. *See* AR 3–15. She thus acknowledged that, as a practical matter, her request was for "immediate reinstatement." AR 3. In support of that demand, she alleged that there was "more than a remote possibility" of proving that "the Department retaliated against me for being a litigious grievant, treating me differently than other less litigious grievants." *Id.* The next month, the Board denied Beberman's request for immediate, interim

---

[7] Finally, Beberman contends it was error for the Grievance Board to find that "even assuming this particular[] [Suitability Review Panel] retaliated against her, Ms. Beberman would not have been found suitable to serve as a a [sic] Diplomatic Courier by any [Review Panel]." ECF No. 14-1 at 26. But that grossly misstates the Board's decision. It held only that, without "consider[ing] the substance of the decision to determine whether it was tainted by the delay," it could not forecast what a hypothetical panel would have decided in response to a hypothetical grievance filed by Beberman. AR 911–12. And that decision was not arbitrary and capricious, nor was the Board's decision that her grievance challenged only the timing and not the substance.

[8] Beberman also asked the Grievance Board to redact or eliminate all references to the employee evaluation reports and VLA violations on which the Suitability Review Panel made its decision. *See* AR 911 n.21. The Board has since rejected those challenges, concluding that "redaction of those facts is not an available remedy." *Id.*; *see also Beberman v. Blinken*, No. 22-cv-3434 (TJK) (D.D.C.).

reinstatement, explaining that its authority under the Foreign Service Act when "considering the involuntary separation of the grievant" was limited to "suspend[ing] such action." AR 103 (quoting 22 U.S.C. § 4136(8)) (emphasis omitted). And it was "unaware of any authority to reinstate a separated employee before deciding the merits of a grievance appeal seeking such reinstatement." *Id.*

In another of Beberman's appeals, this Court explained that the D.C. Circuit already decided that Beberman's challenges to the Grievance Board's denials of interim relief are moot once the Board issues its final decision, as it now has here. *Beberman v. Blinken*, No. 22-cv-144 (TJK), 2024 WL 551666, at *5 (D.D.C. Feb. 12, 2024). As the Court held:

> In another of her lawsuits challenging her denial of tenure, the D.C. Circuit held that because "[i]nterim relief is a stop-gap measure that preserves the status quo while the Board considers a grievance[,] [i]t has no place where, as here, the Board has reached a final decision." *See Beberman v. Blinken*, 61 F.4th 978, 981 (D.C. Cir. 2023). Indeed, under the Foreign Service Act, "interim relief lets the Board stop the Foreign Service from 'involuntar[ily] separat[ing]' an employee only when that separation is 'related to a grievance pending before the Board.'" *Id.* (quoting 22 U.S.C. § 4136(8)) (alteration and emphasis in original). So "[i]f no grievance is pending, the Board has no power to issue interim relief." *Id.* And thus any challenge to the denial of that interim relief is moot. *Id.* So too here. The Board has issued its final decision. Beberman's grievance is no longer pending. Thus, her challenge to the Board's interim decision is moot.

*Id.*

Beberman also argues that she is entitled to backpay for the period between February 13, 2020, the date that she sought temporary interim relief from separation until December 13, 2022, the date her grievance was decided. ECF No. 14-1 at 44. But again, in the same case the D.C. Circuit did not suggest that a claim for backpay somehow revives a claim for interim relief from separation, and in any event, held that backpay is beyond the power of this Court to award:

16

> [T]he D.C. Circuit has already held that "backpay is not an available remedy on judicial review of the Board's orders," *Beberman*, 61 F.4th at 982; *see Hubbard v. Adm'r, EPA*, 982 F.2d 531, 538–39 (D.C. Cir. 1992) (en banc) (backpay is unavailable as equitable relief under the APA). And "[b]ecause this court has no power to issue backpay as a judicial remedy, Beberman's claim is completely devoid of merit." *Beberman*, 61 F.4th at 982 (internal quotation marks and citation omitted).

*Beberman*, No. 22-cv-144 (TJK), 2024 WL 551666, at *6 n.9.[9]

For these reasons, Beberman's appeal of the Board's decision to deny her interim relief from separation while it handled her appeal is moot.

## IV.  Conclusion

For all the above reasons, the Court will grant the Department's Cross-Motion for Summary Judgment and deny Beberman's Motion for Summary Judgment. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: September 27, 2024

---

[9] Even if the Court were to reach the merits of Beberman's claim, it has already rejected the same argument she makes here: that the Grievance Board erred by requiring an "affirmative grant of tenure" for the Department to reinstate her. *Beberman*, No. 22-cv-144 (TJK), 2024 WL 551666, at *5.